

# MERIT SYSTEMS PROTECTION BOARD

*Please type or print legibly.*                                              OMB No.

1.

2.

3.

4.

5.

6.

7.

8.

9.

10.

11.

Exhibit E



# MERIT SYSTEMS PROTECTION BOARD

## Appeal Form--Appellant and Agency Information

*Please type or print legibly.*

**HEARING: You may have a right to a hearing before an administrative judge. If you elect not to have a hearing, the administrative judge will make a decision on the basis of the submissions of the parties. Do you want a hearing?**

12. Do you want a hearing? ☑ Yes ☐ No

**E-Filing: Registration as an e-filer enables you to file any or all of your pleadings with the Board in electronic form. Registration also means you consent to accept service of all pleadings filed by other registered e-filers and all documents issued by the Board in electronic form. You will receive these as PDF documents at the e-mail address you provided the Board. If registered as an e-filer, you may file any pleading, or portion of a pleading, by non-electronic means. You can withdraw your registration as an e-filer at any time.**

13. Do you wish to register as an E-Filer in this appeal?

☑ I elect to E-File ☐ I decline to E-File

14. **I certify that all of the statements made in this form and all attached forms are true, complete, and correct to the best of my knowledge and belief.**

**Robert F. Zachariasiewicz, Appellant** **Date:**

 # MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| A representative helps and counsels a party in the preparation, presentation, or defense of the case. The representative appears with, or for, the party at hearings, settlement discussions, teleconferences, or other proceedings before the Board. The representative does not have to be an attorney. You may proceed without a representative and represent yourself. You may use this form to designate an organization or a person who has agreed to represent you in your case before the Board. **If you are representing yourself, you do not need to fill out this form.** (The Board's regulations on representatives are found at **5 CFR 1201.31.**) By designating a representative, you agree to allow the Board to give your representative all information concerning the appeal. | The address and telephone number of the representative must be correct so that all communications are received on time by the representative. **Any changes of this designation must be sent in writing to the MSPB office handling the case and to the other party.**<br><br>**If you file this designation WITH your appeal, the Board will send a copy of the designation, along with a copy of your appeal, to the other party. If you file this designation AFTER you have filed your appeal, you MUST send a copy to the other party and you MUST send proof to the Board that you have sent a copy to the other party.** |

*Please type or print legibly.*                                                                    OMB No.

**DESIGNATION:** The individual or organization named below is hereby designated to represent:

NAME AND ADDRESS OF APPELLANT:

"I hereby designate _____ to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. **I understand that any limitation on this settlement authority must be filed in writing with the Board.**"

Service Method for Representative :

**Please send this form with your appeal if you are designating a representative.  If you do so after you have filed your appeal, send this form to the Board office where your appeal is pending, and provide a copy to the other party.  Board regulations require that all copies of your communications with the Board after an appeal has been filed be served on the other party.**

MSPB Form 185-4 (          )

# e-Appeal Attachment Transmittal

**Appeal Number:**        201802460
**Appellant Name:**       Robert F. Zachariasiewicz
**Agency Name:**          Department of Justice

Please check the box for each document included with this transmittal.

| ✕ | Name of Attachment | Attachment Processing Status | File Name/Delivery Method |
|---|---|---|---|
| ✕ | Drafted Appeal File | Upload with e-Appeal | 2018.05.24_MSPB Appeal.pdf |

2 copies must be submitted of all documents submitted in hardcopy.
Send documents to be submitted in paper form to:
Washington DC Regional Office
1901 S. Bell Street, Suite 950
Arlington, Virginia 22202
United States of America

Phone: (703) 756-6250
Fax: (703) 756-7112

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

| | | |
|---|---|---|
| ROBERT F. ZACHARIASIEWICZ, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DRUG ENFORCEMENT ADMINISTRATION, | ) | |
| | ) | |
| Agency. | ) | DATE: May 24, 2018 |
| | ) | |

## <u>MIXED CASE APPEAL OF ROBERT ZACHARIASIEWICZ</u>

### I.      SUMMARY OF THE ACTION

1.      Appellant Robert F. Zachariasiewicz ("Appellant"), an employee of the Department of Justice, Drug Enforcement Administration ("DEA" or "Agency"), files this mixed case appeal to the Merit Systems Protection Board ("MSPB" or "Board") pursuant to 5 CFR 1201.151, 5 U.S.C. 7701 and 29 CFR 1614.302(a)(2) and alleges that the DEA engaged in both whistleblower retaliation and reprisal, sex and race discrimination, and retaliation and reprisal in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. and in addition, Appellant asserts he was also subject to whistleblower retaliation and reprisal in violation of 5 USC 2302 (b)(8) and (9), when the DEA repeatedly failed to select and promote Appellant to senior positions, despite the fact that he was amply qualified, if not superior in ability in comparison to the actual selectees.  Further, the Agency precluded Appellant from being able to either seek promotion, or to have any realistic prospect for promotion, when it prevented Office Heads from even considering Appellant for promotion in violation of 5 USC 2302 (b)(4)-(6) (prohibiting limitations on precluding federal employees from being able to compete for promotions).

1

2.      As noted below, Appellant was passed over for less qualified candidates, who were of a different race and gender, on one or more occasions, despite being ranked first on the Office Head (usually a Special Agent in Charge) Recommendation Memorandum ("SAC Memo").

3.      Appellant asserts that his race and sex were determinative factors in his non-selection, based on actual comments made to him by senior DEA officials.  Appellant further asserts that DEA officials also precluded him from even being considered for selection in violation of the Merit System Principles, in retaliation and reprisal for Equal Employment Opportunity ("EEO") and Whistleblower protected activity.  This amounted to a constructive suspension since it impeded Appellant from being considered for promotion. This occurred after the Appellant contested a policy that would effectively prohibit him from being able to apply for promotion in the first instance.  The Agency rescinded that policy, but continued to block Appellant from being promoted, because it precluded Office Heads from recommending him for promotion.

4.      Appellant initially filed complaints before the Board that alleged an unfair employment practice by the Agency based on his belief that the DEA was non-selecting personnel in the Special Operations Division, as part of some improper and ill-conceived policy.  Indeed, Appellant was informed in August 2015 that he could not even be considered for promotion, because senior DEA officials had advised Office Heads that he could not be placed for selection on any Office Head Recommendation to the DEA Career Board.

5.      Indeed, Appellant protested this policy, which was adopted in 2015, to the highest levels of the Agency, including the current Acting Administrator Robert Patterson.  Following that protest, Appellant was effectively "blacklisted" in retaliation for his opposing a policy that violated the Merit System Principles and Office of Personnel Management ("OPM") regulations on competitive selection.  The policy was purportedly rescinded by the highest levels of the DEA.

Appellant was told he could apply for positions and indeed was recommended as a top choice on at least one or more of the positions to which he applied.

6.      Although Appellant was told he could apply for promotion subsequent to this protest, Appellant learned that Office Heads, whose recommendation is a pre-requisite to his possible selection for promotion, had been advised not to recommend him for promotion in the first instance.  When an Office Head avoided this admonition and ranked Appellant as his first choice, the Agency selected a less qualified African-American female for the position.  Appellant has applied for multiple promotions since protesting this policy and has not been selected.  Thus, Appellant brings a mixed case claim because the matter involves non-selections that followed his whistleblower activity and which also involved, or separately involved, discrimination based on race and sex.

7.      For the matters which occurred after the date the Appellant first filed his MSPB complaint, Appellant also contends that his non-selections were reprisal for his filing of an MSPB appeal and thus violated 5 USC 2302(b)(9).

8.      Appellant filed a complaint with the Office of Special Counsel ("OSC"), on October 3, 2017 contending that he had engaged in protected whistleblowing for reporting what he believed to be a violation of law, rule or regulation.  As noted below, he has exhausted his appeal to the Office of Special Counsel, which occurred on March 7, 2018 (when 120 days passed from the filing of the appeal without action by the OSC).

9.      As a result of these violations, Appellant seeks a declaratory judgment, permanent injunctive relief, back pay, front pay, pain and suffering damages and attorneys' fees and costs associated with this action.  Appellant also seeks corrective action for the whistleblower reprisal and the violation of various federal statutes.

3

10.     Appellant also seeks a retroactive promotion to GS-15 from the initial date he was subject to reprisal until the present.

## II.     PROCEDURAL HISTORY

11.     Appellant brings this action in response to the Order of Dismissal without Prejudice entered by the Administrative Law Judge ("ALJ") on January 30, 2018.  That Order provided Appellant 180 days to refile his appeal, which was dismissed because the Appellant had allegedly failed to exhaust his request for relief for whistleblower reprisal before OSC before filing an Independent Right of Action Appeal ("IRA") with the Board.  The discrimination portion of the claim was timely filed, but the ALJ ruled that the failure to exhaust the OSC complaint deprived her of the jurisdictional pre-requisite to hear an appeal that's only timely component was an EEO claim.

12.     Despite regulations that required the Agency to process the EEO portion of the dismissed appeal, since the time of the dismissal, the Agency has taken no action to process the EEO claim and has done no preliminary investigation of any kind as required under 29 CFR 1614.105-108.

13.     The failure to process the claim is a form of hostile work environment under federal EEO law and thus a hostile work environment claim is now ripe.  Further, on information and belief, selections that followed CMB-17-340 (the position previously complained of) were based on retaliation and reprisal for his protected activity of filing a race and sex claim.  Under MSPB law and Supreme Court precedence, additional claims that flow out of the initial discriminatory conduct need not be filed separately, but can allow an appellant to include the similar claims in a single appeal or action.  This avoids a fracturing of the appeal.

14.     On October 3, 2017, Appellant timely filed a mixed case appeal with the MSPB regarding his non-selection by the DEA for a position as a GS-15 Supervisor in the Agency, Special Operations Division (CMB-17-340).

15.     Believing he was more qualified than the actual selectee, Renita Foster, and learning that the applicant was selected over him because she was an African-American female, Appellant brought a claim of race and sex discrimination.  Additionally, Appellant had protested a policy that the Agency attempted to implement which, on its face, violated Merit Systems Principles by limiting Appellant's ability to seek and be selected for promotion based on his merit.

16.     On November 14, 2017, the ALJ dismissed the appeal without prejudice, ruling that Appellant's claims of an unlawful employment policy did not fall within the parameters of MSPB law requiring that the policy violate some well adopted standard of OPM.  With respect to any claim of whistleblower reprisal for protesting the perceived improper policy, the ALJ ruled that Appellant was required to file his whistleblower claim with the Office of Special Counsel and under MSPB law, the ALJ had no separate authority to address the EEO complaint prior to a review by the OSC of Appellant's whistleblower complaint. [1]

17.     Appellant filed an appeal with the OSC on November 1, 2017.  However, the OSC had not determined any course of action at the time of the ALJ's ruling.  The OSC provided Appellant with a notice of exhaustion on March 7, 2018 as it had not examined his appeal within the prescribed 120 days.

18.     Despite federal regulations concerning "mixed case appeals" and "mixed case claims," which required the DEA to docket the dismissed appeal's EEO related issues as an EEO claim as of the date of the dismissal, and to then to commence processing of that claim under federal EEO regulations, the DEA failed to commence EEO processing and persisted in that refusal despite being advised of the regulatory framework.

---

[1] Appellant preserves for the record the prior claims, despite their dismissal. Substantively, whether the claims were improper employment practices is not probative of the strength of the Appellant's claims of retaliation and reprisal and the remedy for the harm done to Appellant, is fully encompassed by the current appeal.

19.     The remedy for such refusal under federal EEO practice is to sanction the Agency for the refusal and may include striking defenses and evidence and forcing the Agency to bear the cost of discovery for its refusal to conduct the federally mandated case processing and investigation required under 29 CFR 1614.101, et. seq.

20.     In the ALJ's Order of Dismissal without Prejudice, she authorized the Appellant to submit his renewed claims within 180 days of the order.  This appeal is therefore timely submitted.

21.     Although Appellant believes his case may be ripe for processing in the U.S. District Court, he files this appeal to the MSPB to ensure both administrative review and exhaustion.

22.     The Appellant has included like and similar claims in his new appeal that arose after the dismissal without prejudice.  These claims are brought as evidence of retaliation and reprisal, both for his engaging in protected EEO activity and for Appellant filing claims before the MSPB.[2]

### III.     STATEMENT OF FACTS

**Appellant's Exemplary Career with the DEA**

23.     Appellant was hired as a Special Agent to the DEA in January 1998.

24.     Appellant, graduated from the University of Denver College of Law in December 1997. Based on his advanced degree and honorable service as an officer in the United States Navy, Appellant was hired as GS-9 Special Agent.

25.     In the years between 1998 and 2010, Appellant was promoted several times.

26.     In January 2002, Appellant was early selected for GS-13 based on his superior casework.

---

[2] 5 USSC 2302(b)(9) makes it unlawful to

take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of — (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation; (B) testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A);  (C) cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law; or (D) for refusing to obey an order that would require the individual to violate a law.

27.     Appellant served in "Enforcement Groups" throughout his career, with one exception in that he conducted his required "Headquarters tour" in the Special Operations Division between July 2010 and August 2013.

28.     In June 2003, Appellant was selected via Career Board Action into the Bilateral Investigations Unit at the DEA's Special Operations Division ("BIU") as a GS-13.  The Unit was specifically designed to investigate and prosecute international drug kingpins whose networks had proven resistant to the limited reach of traditional U.S. laws and law enforcement.

29.     Appellant worked on many of DEA's most significant and acclaimed investigations that involved transactional criminal organizations that directly threatened United States national security and interests.

30.     Appellant served as a lead case agent on multiple critical operations targeting major narcotics and terrorist affiliated groups; oversaw very high level informants; conducted numerous wiretaps and other surveillance; served regularly as an affiant for Title III affidavits, search warrants, and other federal orders; testified repeatedly in United States federal court as well as foreign courts of law; worked with a wide variety of state, federal and international law enforcement organizations; regularly briefed and interacted with senior officials of many U.S. and foreign law enforcement, intelligence and military agencies; and developed a highly honed set of investigatory and supervisory skills in a variety of DEA positions.

31.     Appellant was selected in 2007 to focus on the emerging threat of Narco-Terrorism when a separate group was created within the BIU for this specific purpose.

32.     During his career, Appellant has routinely received the highest possible performance ratings and numerous monetary awards, including the highly vaunted Administrator's Award issued by the head of the Agency.

33.     Appellant also received the Samuel J. Heyman, Service to America Award which is sparingly given to the most capable of federal employees for exceptional performance.

34.     Appellant was most recently promoted to a GS-14, 1811 Series, Supervisory Special Agent on July 2010, after selection by the DEA's Career Board.  He was assigned to the Special Operations Division, Latin America and Caribbean Section, as a Staff Coordinator.  Through this selection, Appellant was offered the opportunity to fulfill his GS-14 Headquarters requirement prior to serving as a field GS-14 Group Supervisor.

35.     In recognition of his abilities, in August 2013, the Agency appointed Appellant as the Acting Group Supervisor of the Special Operations Division, Bilateral Investigations Unit ("BIU"), Latin America Group, a region that is central to the DEA's interdiction efforts.  In November 2013, Appellant was formally selected in a Career Board action as the Group Supervisor of the BIU Latin America Group.  While the selection involved no promotion in terms of grade, this domestic field enforcement Group Supervisor position has traditionally held great prestige and been a stepping stone to promotion and greater responsibility within the Agency.  Appellant and his group were regularly recognized for their outstanding performance, both within and outside of the Agency.

36.     Senior DEA management officials have testified in the recent past that Special Agents who serve as lead case agents; who possess expertise in complex enforcement operations involving national and international enterprises and cartels; who deploy high level informants and master wiretap and other surveillance techniques; who secure awards and recognition; and who participate in federal criminal cases by testifying in court, assisting federal prosecutors and securing convictions and seizures of assets, are preferred candidates for promotion.

37.     Senior officials have also testified they look for persons who take on supervisory responsibility and manage agents, operations and budgets well as preferred promotions in the supervisory ranks.

38.     Appellant's entire DEA career demonstrates that he met and continues to meet all the objective criteria relied upon in making promotion and career enhancement decisions as to his employment.

### Appellant seeks to promote to the GS-15 Level

39.     In 2015, Appellant's then supervisor Mark Hamlet, the Special Agent in Charge ("SAC") of the DEA SOD, began advising Appellant that he should seek promotion to a GS-15 supervisory level.  Hamlet stated he would personally support the promotion within SOD and hoped Appellant would continue to serve in SOD when an opening arose.

40.     In July of 2015, Assistant Special-Agent-in-Charge ("ASAC:) Lou Milione of the SOD/BIU was promoted to the Senior Executive Service ("SES"), creating an eligible vacancy for Appellant.  Prior to his promotion, ASAC Milione was Appellant's direct supervisor.  Appellant was informed he should apply for the now vacant position.

41.     DEA Special Agent promotions are governed by regulations that require positions to be advertised and filled through a competitive selection process.  For Special Agent position openings, the DEA normally provides a "CMB" number defining the year and position.  Such positions are required, under Agency and federal regulations, to be competitively advertised.  Further, the selection process for Special Agents is also covered by court ordered consent decrees.  Thus, Milione's position should have been openly advertised and subject to a competitive selection process.

42.     The Agency failed to advertise the position or make a competitive selection.  Appellant

learned that the vacancy created by Mr. Milione was filled by a lateral transfer and no competitive process was utilized, although it would have been required by federal personnel regulations.

**Appellant Makes Protected Disclosures Opposing Promotion Policy**

43.    In August 2015, Appellant sought to protest the lack of advertisement and competitive selection.  Appellant was then told that he could not even be considered for promotion and thus the selection process was secondary because DEA management had advised his Office Head that they could not even recommend him for promotion.

44.    Appellant complained that this violated Agency regulations concerning career advancement for Special Agents as well as federal personnel regulations which involved the right of personnel to apply for promotion as well as the necessity for open advertisement and competitive selection of federal positions.

45.    Appellant informed his chain of command and an attorney in the Chief Counsel's Office that he wanted to retain counsel and challenge these violations.

46.    Appellant was informed that filing a complaint would be detrimental to his career and to advancement. Indeed, he was told it would put a "bulls-eye" on his back.

**Following his protest of the Non-Selection Appellant is Involuntarily Transferred in violation of Agency Policy Procedure**

47.    After his protected disclosures, Appellant was told that the DEA was instituting a policy to involuntarily transfer Staff Coordinator employees out of its prestigious Special Operations Division.

48.    Appellant was not a Staff Coordinator, he was a Domestic Enforcement Group Supervisor who was supposed to be exempt from the policy and was specifically informed by his direct chain of command that he was exempt from the policy.  In fact, Domestic Enforcement Group Supervisors who have previously performed a Headquarters tour of duty as a GS-14 are always

precluded from a forced transfer, except in cases of disciplinary action.

49.     Appellant's career track as a Senior Agent would traditionally involve seeking promotion from his Group Supervisor position to that of a Section Chief or Assistant Special Agent in Charge. An involuntary transfer would disrupt that track and be seen as a black mark against Appellant.

50.     Further, under DEA's Career Advancement Policy, a Special Agent at the GS-14 level is expected to perform a single tour of duty in the Agency's Headquarters Division for three or more years to gain policy and Headquarters experience which is required to make them competitive for further advancement.

51.     Appellant had already fulfilled his required Headquarters tour and thus a transfer back to another Headquarters position would render him significantly less competitive since it deviated from the traditional career path.

52.     To accept an unrequested reassignment back to a second Headquarters position at the same grade would be seen as a retrograde movement, indeed a de facto demotion, rendering Appellant far less competitive for promotion.  Such involuntary transfers were seen as a clear signal of poor performance or conduct - a clear signal that the Agency had lost confidence in Appellant.

53.     When Appellant was informed that he would be involuntarily transferred on or about January 14, 2016, he protested the involuntary transfer to the senior management of the Agency, both verbally and in writing.

54.     On or about February 1, 2016, Appellant was directed to submit a memorandum of preference to address his involuntary transfer to another Headquarters section (out of SOD).  Appellant was told by ASAC Papadopolous that it would be insubordinate for him *not* to comply with the directive.

55.     Appellant submitted a memorandum of preference as ordered on February 12, 2016.  In the

memorandum, Appellant detailed that he had already completed a tour of duty in a Headquarters assignment and was currently serving in a position as a Domestic Enforcement Group Supervisor as appointed by DEA's Career Board.

56.     Appellant's involuntary transfer went through a second contortion in March 2016 when, in retaliation for his protest, Chief of Operations Anthony Williams directed through the chain of command that Appellant select a field division position to be assigned to through a domestic position preference memo.

57.     Appellant objected to the production of the list and to a transfer outside the Washington D.C. area as a hardship, which would be disruptive to the care and education of a minor child with Asperger Syndrome, an Autism Spectrum Disorder fully recognized as a disability under the Diagnostic and Statistical Manual V.

58.     This objection amounted to a request for reasonable accommodation under the associative prong of the Rehabilitation Act of 1973.

59.     On information and belief Anthony Williams directed Appellant to submit a second memorandum, listing areas outside of the Washington Field Division.

60.     Appellant continued to protest the involuntary transfer.  He was informed that the transfer was not specifically directed to him but was designed to apply to SOD as a whole.[3]

61.     But, as Appellant has determined, it appears that the "policy" was really directed largely to him as retaliation and reprisal for his protesting the non-competitive selection process and roadblocks erected to his promotion as detailed above.

62.     Shortly after the transfer was ordered by the Career Board, DEA Administrator Charles Rosenberg determined that Appellant's objection to the policy, that as a Domestic Enforcement

---

[3] Based on this, Appellant filed his Employment Practices claim.

Group Supervisor he would normally be exempt from the involuntary transfer, was well founded and that it should not have applied to him.

63.     The Agency, nevertheless, did not rescind the transfer order and Appellant was sent to the Washington Division Office on August 16, 2016 as a culmination of the involuntary transfer.

64.     On information and belief, Appellant is and was the only Domestic Enforcement Group Supervisor to be involuntary transferred without pending disciplinary action.

65.     Appellant's protest against the failure to competitively advertise positions in the DEA for which he was qualified and the bars erected to him being considered for promotion disclosed a violation of the Merit System Principles, of the regulations of the OPM and of the DEA's own policy.

66.     Appellant's involuntary transfer, following his protest of the non-competitive selection at SOD and bars against his promotion and his protest of his involuntary transfer that followed, constituted both retaliation for a protected disclosure and a separate act of whistleblowing, as the involuntary transfer was both retaliatory and constituted a violation of DEA policy.

**The Agency Blacklists Appellant in Retaliation and Reprisal, Prohibiting him from Promoting to Positions to which he was Well Qualified**.

67.     On February 23, 2016, Appellant sent an email to his SAC, Mark Hamlet, seeking help in overcoming the unjust bars created against his promotional opportunities to GS-15.  Hamlet responded orally by saying that he could not support any request by Appellant to be listed as a candidate for promotion for fear of antagonizing the DEA's top management.

68.     The Appellant applied for four (4) GS-15 positions between November 2015 and January 2016.  These included CMB-16-312, CMB-16-320, CMB-16-336, and CMB-16-353 which were all Section Chief positions in the Special Operations Division.  Although very highly qualified for each of these positions, Appellant was not selected for any of them.

69.     The Office Head involved in recommending agents for selections for each of these vacancies was Mark Hamlet.

70.     Hamlet directly informed Appellant that senior management at DEA, including Deputy Administrator Jack Riley and Chief of Operations Anthony Williams, would not allow Hamlet to rank Appellant as a possible choice for selection.

71.     Appellant advised several high-ranking DEA managers, most notably Acting Administrator Robert Patterson (who was a voting member of the Career Board at the time), that a policy prohibiting his selection for promotion was illegal.

72.     On January 11, 2016, Appellant received an email from Acting Administrator Patterson that confirmed the retaliation and bars from promotion that Appellant was facing.

73.     On information and belief, Appellant's whistleblowing was the reason that management directed the Office Head making recommendations for the vacancies to which Appellant applied, not to rank him as possible candidate for selection to the vacancies in question.  This had the impact of removing Appellant from active consideration by the Career Board to any of the four positions he applied for, listed above.

74.     In response to his protests, DEA Deputy Administrator Milione instructed Appellant to "keep your bag shut."  Mr. Milione explained that the Appellant's name was being discussed in Headquarters as a problem and as insubordinate because the Appellant was resisting his forced transfer out of SOD and his exclusion from formal consideration for promotions within SOD.

75.     Between March and June 2016, Appellant submitted thirteen (13) applications for open GS-15 positions advertised at DEA Headquarters.  These involved CMB No.'s CMB-16-359, CMB-16-360, CMB-16-361, CMB-16-362, CMB-16-363, CMB-16-369, CMB-16-373, CMB-16-374, CMB-16-375, CMB-16-380, CMB-16-381, CMB-16-382, and CMB-16-384.  The Appellant

was well qualified for all positions applied for to include: multiple positions in DEA's Office of Professional Responsibility and Financial Operations; Section Chief in the Fusion Center; Section Chief in the Regional Operations Section; Section Chief in Operations Management; and Executive Assistant in the Office of Diversion. Appellant was rejected for selection for all of these positions.

76.     In August of 2016, Appellant applied for a GS-15 position vacancy on the Board of Professional Conduct under CMB-16-309-1. Appellant interviewed with ASAC Chris Quaglino, the direct supervisor over the position. Mr. Quaglino told Appellant that he was highly qualified and undoubtedly would be placed among the top ranked candidates for selection. This position was not chosen in the September or December 2016 Career Boards and was later re-advertised. Appellant was not selected for the position.

77.     In September 2016, Appellant applied for a job vacancy for a GS-15 (ASAC) position in the Office of Congressional and Public Affairs. The vacancy was filled without using the competitive process, in violation of OPM standards for selection based on merit, after the advertisement was "rescinded." In March 2017, Appellant was approached by Gary Owen, Chief of Public and Congressional Affairs, and asked why Appellant had not informed him that he had applied for the position. Owen stated he would have chosen Appellant if the position had been subject to competitive selection. ⌊SEP⌋

78.     On November 4, 2016, Appellant sent an email to Acting Administrator Patterson upon Patterson's selection as Acting Administrator. Appellant had worked with and for Patterson in the New York Field Division. Patterson replied "[y]ou still have to stay at the WDO... Thanks."

79.     In January 2017, Appellant applied for two (2) additional positions on the Board of Professional Conduct and re-applied for the Board position that had been tabled and not

selected. These three openings were carried as CMB-17-316, CMB-17-318, and CMB-17-322. Appellant was not selected for any of the three openings even though he was substantially more qualified than the selectees.

80.     Upon information and belief, Appellant's non-selections for these openings were based on retaliation and reprisal for his prior protected activity.

81.     Appellant also applied for two (2) GS-15 promotional opportunities advertised in the DEA Special Operations Division, CMB-17-315 and CMB-17-325. These were filled at the March and June 2017 Career Boards. Appellant was more qualified than the selectees, but was again passed over. Appellant alleges he was unlawfully denied these positions due to retaliation and reprisal for his protected whistleblowing protected activity.

82.     In February 2017, Appellant met with Special Operations Division SAC Raymond Donovan, who had replaced Mr. Hamlet, to discuss the pattern of non-selections and his chances for promotion with SAC Raymond Donovan. SAC Donovan told Appellant that Deputy Administrator Jack Riley had taken issue with the Appellant's actions and that the Appellant was now in disfavor. Donovan explained that Riley was also upset that then U.S. Attorney for the Southern District of New York Preet Bharara had expressed support for Appellant remaining in the Special Operations Division. Riley stated that this had upset him and made him consider a transfer of the Appellant to an undesirable position "on the border".

**Appellant is Non-selected due to his Race and Gender**

83.     In June 2017, Appellant applied for a GS-15 position as the Assistant Special Agent in Charge for the SOD, Caribbean and Latin American Section ("OSL"), Vacancy Announcement CMB-17-340.

84.     Consistent with DEA practice, Appellant provided an eight-point memorandum of his

16

skills sets and accomplishments as part of his packet.

85.    As per DEA practice, the acquiring Office Head SAC Raymond reviewed the list of best qualified candidates and made a ranking score of his top selections.

86.    Appellant was informed that he was ranked as Donovan's first ranked choice for selection.

87.    DEA senior managers who sit, or have sat, on the Career Board, which make the ultimate selection (at least in theory), have testified, repeatedly and consistently, that barring unusual circumstances (such as a hardship request or the need to fill a slot from a qualified agent returning to the United States from a foreign assignment), the Career Board will invariably select the top ranked candidate on the SAC Memo that is completed and submitted to the Career Board by the acquiring Office Head.

88.    Appellant's being ranked as Donovan's top choice means he was the best qualified candidate for the position and thus was substantially more qualified than the selectee.

89.    On September 6, 2017, the Career Board met.  On September 12, 2017, the Career Board minutes were released.  Renita Foster, an African-American female who was significantly less qualified than Appellant, was chosen for the SOD, OSL ASAC position.

90.    Subsequent conversations between Appellant and DEA managers appeared to confirm his belief that his race and sex were a factor in his non-selection.

91.    On information and belief, Appellant also asserts that his prior protected activity may have factored into the non-selection.

92.    Assuming that, as the Agency has contended, his prior whistleblowing was not a factor, it appears that the Career Board relied on the gender and race of the selectee to choose her over Appellant.

93.    Even if the SAC Memo was not conclusive of his superior qualifications, a simple

comparison between Ms. Foster and Appellant would have objectively established him as the more qualified candidate. Appellant has far greater experience, both within SOD and internationally. Further, he has had a more varied and distinguished career than Ms. Foster and had prior experience working in the very section that he sought promotion to supervise.

94.     On September 27, 2017, DEA Acting Administrator Patterson, who, on information and belief, sat on the Career Board selecting Foster, personally informed Appellant that he had been rejected for a less qualified candidate based on race and/or sex (or both).

**Appellant's Initial Mixed Case appeal**

95.     On November 14, 2017, the Career Board denied Appellant promotion to GS-15 for CMB-17-364, CMB-17-367 and CMB-17-368. Appellant applied for several additional positions (CMB-18-300 and CMB-18-301) that were either table and re-advertised under another number or filled in a non-competitive process and cancelled.

96.     Between December 2017 and February 2018, Appellant applied for eleven (11) GS-15 openings under CMB-18-308, CMB-18-315, CMB-18-316, CMB-18-317, CMB-18-321, CMB-18-321, CMB-18-323, CMB-18-325, CMB-18-326, CMB-18-329, CMB-18-330. These included positions in DEA's Office of Special Testing; Board of Professional Conduct; Office of Diversion; Office of Professional Responsibility; Financial Operations; and Special Operations Division. Appellant was passed over for all positions for which he applied.

97.     During the course of applying and interviewing for one of these positions, CMB-18-316, Section Chief in DEA's Financial Operations, Appellant was told that he was most qualified for the position.

98.     At least certain members of the Career Board were aware of Appellant's MSPB complaint that had been filed in October of 2017 and, on information and belief, they relied on that protected

18

activity and the complaint that was filed with the MSPB and the OSC as a basis for refusing to select Appellant.

99.     On October 3, 2017, Appellant filed his initial appeal alleging that he been subject to unlawful employment practices, discrimination, and whistleblower reprisal in his non-selections for GS-15 positions between 2015 and 1017.

100.    On November 14, 2017, the ALJ dismissed that appeal for lack of jurisdiction, noting that she had no authority over non-selections generally and that Appellant had yet to exhaust his claim of whistleblowing to the OSC.  Further, the ALJ claimed that the discrimination claim could not be brought in its own right, separate from any cognizable adverse personnel action.

101.    On December 19, 2017, Appellant refiled his initial mixed case appeal with the MSPB alleging that he been subject to unlawful employment practices, whistleblower reprisal and discrimination.

102.    On December 21, 2017, the ALJ issued a "Show Cause Order", asserting that a jurisdictional issue existed as to whether the whistleblower reprisal portion of the claim had been properly exhausted and questioning whether the employment practices portion of the appeal had been properly raised.

103.    On January 5, 2018, the Appellant sought to withdraw his appeal without prejudice, pending OSSC adjudication of his whistleblower complaint.

104.    On January 30, 2018, the ALJ dismissed the appeal without prejudice, granting appellant up to 180 days from that date to refile his appeal.

105.    On March 7, 2018, more than 120 days passed since the OSC was presented the appeal.  As such, Appellant has exhausted his OSC whistleblower allegation and brings this appeal on the issues cited in his initial appeal.  Appellant further alleges that his non-selection for positions that

followed his submission of an MSPB appeal were based on retaliation and reprisal for filing that appeal, itself, as well as whistleblower reprisal and retaliation and for those matters occurring after he raised his EEO complaint in the mixed case appeal, retaliation for assertion of protected EEO rights.

## IV.    CLAIMS

### A.    Appellant's Title VII Claim

106.    As described above, the Agency discriminated against Appellant with respect to the terms and conditions of his employment, including but not limited to, compensation and selection decisions, because of his gender (male), in violation of Title VII, by failing to promote him when he was the most qualified candidate.

107.    The Agency's conduct has been intentional, deliberate willful, and conducted in callous disregard of the rights of Appellant.

108.    Title VII's anti-discrimination provision makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).

109.    In June 2017, Appellant applied for a position as the ASAC of the SOD, Caribbean and Latin American Section ("OSL") under CMB-17-340.  The head of SOD, SAC Donovan, who was the person most qualified to assess the strengths of all the candidates, put forward Appellant as his top choice to the Career Board.

110.    On September 6, 2017, the Career Board met to consider the position.  The minutes from the Career Board meeting were released on September 12, 2017 and confirmed that Appellant was ranked number one (1) on the selection list.

111.   Appellant was not selected for the ASAC of the SOD, OSL position.  Rather, Ms. Renita Foster, an African-American female who was significantly less qualified than Appellant, was selected.

112.   Appellant alleges that he was not selected for the ASAC position because he was a male, and/or because he was White, and not based on his qualifications or any other meritorious grounds.

113.   Appellant alleges that he was substantially more qualified than Ms. Foster to perform the duties of the ASAC position.

114.   Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any of his employees...because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

115.   The Agency's discriminatory denial of selection for promotion against Appellant constitutes unlawful retaliation in violation of Title VII's anti-retaliation provision.  Further, the Agency's refusal to process the claim was part of a hostile work environment designed to discourage Appellant and others from pursuing protected EEO activity.

116.   As a remedy, Appellant seeks selection to an ASAC or other GS-15 position to which he applied, or to one for which he is now qualified.  He seeks any pay differential, benefits, front pay, pain and suffering and emotional distress damages up to the statutory maximum, attorneys' fees and costs and injunctive relief requiring the Agency to fully comply with Title VII and not discriminate against males in the selection of upper level positions.  Appellant further seeks any remedy the Court considers appropriate and just.

**B.      Appellant's Whistleblower Claim**

117.    Beginning in August 2015, the Appellant protested both the failure to comply with the competitive selection process, and his involuntary transfer as a violation of law rule or regulation.

118.    The Appellant also claimed that these actions were an unfair employment practices under 5 C.F.R. § 300.103, in his complaint filed with the MSPB on December 19, 2017.

119.    The Appellant also filed claims regarding his non-selections up to that point and alleged he had been subject to reprisal for reporting his initial allegations of the Agency's non-compliance with Agency and federal regulations concerning competitive promotions.

120.    Appellant vocalized his concern as to the policy restriction and advised several high-ranking DEA managers, including Acting Administrator Robert Patterson, that the policy was unlawful and inappropriate.  Appellant made these reports prior to the acts of non-selection.

121.    As a result of Appellant voicing his opposition to the unlawful policy he was "blackballed" within the Agency and unlawfully denied future promotions.

122.    Appellant's denial of promotional opportunities, as described and alleged above, qualified as a form of retaliation and reprisal aimed at silencing Appellant's claims of violations of law, rule or regulation.  Further, Appellant was subject to retaliation and reprisal for filing his complaints to OSC and to the Board.  As proof, Appellant continues to be non-selected for promotion, despite being amply qualified for selection and he believes he is not placed in a competitive position on many Office Head Recommendations due to the same retaliation and reprisal.

## V.      PRAYER FOR RELIEF

123.    WHEREFORE, as a remedy, Appellant seeks selection to an ASAC or other GS-15 position to which he applied, or to one for which he is now qualified.  He seeks any pay differential, benefits, front pay, pain and suffering and emotional distress damages up to the statutory

maximum, attorneys' fees and costs and injunctive relief requiring the Agency to fully comply with Title VII and not discriminate against whites (Caucasians) in the selection of upper level positions.  Appellant further seeks any remedy the Board considers appropriate and just.


Respectfully submitted,
Robert F. Zachariasiewicz
By Counsel


 /s/ Kevin E. Byrnes, Esq.
Kevin E. Byrnes, Esq.
Samuel M. Adelmann, Esq.
**FH+H, PLLC**
1751 Pinnacle Drive, Ste 1000
Tysons, VA 22102
T: (703) 590-1234
F: (703) 590-0366
kbyrnes@fhhfirm.com
sadelmann@fhhfirm.com
E-file@fhhfirm.com

23