IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROBERT F. ZACHARIASIEWICZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. 1:19-cv-00055 (RDA/JFA) |
| U.S. DEPARTMENT OF JUSTICE ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

This matter came before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim [Dkt. 16]. For the reasons stated below, the motion is granted.

*Standard of Review*

"[A] court's subject-matter jurisdiction defines its power to hear cases." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560 (2017). Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may be presented in "two critically different ways." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true." *Id.* Second, it may be asserted that the allegations in the complaint are false, in which case a trial court may conduct evidentiary proceedings and render factual findings. *Id.* Here, the Court is confronted with an analytical framework under the first methodology. "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction,

the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

*Factual Background*

As asserted in the verified complaint, Plaintiff is a decorated DEA agent who worked in the elite Special Operations Division ("SOD") for several years. In January 2016, the new DEA Chief of Staff, Anthony Williams, initiated a policy of transferring veteran agents out of SOD to bring "fresh" agents in. Plaintiff thought this strategy unwise, so he "protested the action to senior management" repeatedly for several months during 2016. Eventually, after ongoing discontent within SOD as well as intervention by Preet Bharara, the then-U.S. Attorney for the Southern District of New York, the transfer policy was apparently abandoned. However, DEA went ahead with Plaintiff's transfer anyway and moved him to the Washington Division Office.

Following his transfer, Plaintiff began applying to a slew of GS-15 level positions throughout DEA.[1] Plaintiff alleges that he applied to more than 30 vacancies during a two-year period between late-2015 and September 2017 but was not selected to fill any of the vacancies despite being either the most qualified or among the most qualified in each instance. One such vacancy that Plaintiff applied to, and was rated the most qualified

---

[1] When an agent applies for a promotion, the Special Agent in Charge ("SAC") from the pertinent office provides a memorandum to the Career Board which identifies a recommended candidate for the position. The Career Board, which is composed of various individuals including the Chief of Staff and Deputy Administrator, discusses each applicant, rates them according to a numerical rubric, and ultimately compiles a list of candidates in order of qualification. The candidate on the top of the list is the most qualified, and so on.

candidate for, was Assistant Special Agent in Charge ("ASAC") for the Caribbean and Latin American Section of SOD ("ASAC-SOD").  However, the Career Board eventually selected the second-most qualified candidate, an African-American female named Renita Foster, to fill the position.  Plaintiff alleges that Chief of Staff Williams openly advocated against him in the Career Board discussions, and instead lobbied for Foster because she had "a lot more diversity."

By September 2017, Plaintiff believed that DEA was systemically depriving him of promotion opportunities in violation of law, so he entered the maze of administrative procedures within the agency that address complaints regarding adverse employment actions.  He first went to the Equal Employment Opportunity office ("EEO") at DEA and filled out an Intake Form, alleging racial and gender discrimination in his non-selection for the ASAC-SOD position.  Plaintiff did not pursue the EEO claim for long – he withdrew it six days later, stating in an email to the EEO office that he would "pursue all of [his] claims through the [Merit Systems Protection Board ("MSPB")]."

Plaintiff filed his first MSPB case in October 2017 ("*MSPB I*"), alleging that he was subject to retaliation and reprisal under the Whistleblower Protection Act ("WPA") for his previous complaints about Williams' transfer policy.  Plaintiff also included his discrimination claims, as well as other unlawful employment practice claims for conduct that violated certain Office of Personnel Management ("OPM") regulations.  The MSPB dismissed Plaintiff's *MSPB I*, concluding that he did not administratively exhaust the WPA claims through the Office of Special Counsel ("OSC"), he did not articulate a legitimate unlawful employment practice claim, nor had he properly brought the discrimination claims before the MSPB.

Perhaps sensing the impending outcome of *MSPB I*, Plaintiff filed an action with the OSC less than two weeks before the MSPB issued its decision in *MSPB I*, setting forth the WPA claims. Then, to make matters more complicated, he filed his second case with the MSPB in December 2017 ("*MSPB II*"), *before* the OSC had resolved Plaintiff's claims. Having not achieved administrative exhaustion, Plaintiff requested to withdraw *MSPB II* until the OSC completed its investigation. The MSPB dismissed *MSPB II* without prejudice and granted Plaintiff up to 180 days to re-file to allow the OSC case to mature. On March 7, 2018, the OSC informed Plaintiff that it would not pursue his case and notified him of his right to an Individual Right of Action ("IRA") appeal before the MSPB.

Plaintiff then filed his third and final case before the MSPB ("*MSPB III*") 78 days later, on May 24, 2018, and again asserted the WPA claims, discrimination claims, OPM claims, and claims related to other prohibited personnel practices. DEA filed a motion to dismiss *MSPB III*, which the MSPB granted nearly entirely, with the exclusion of certain WPA claims. Plaintiff then filed this action in federal court, asserting that this Court has jurisdiction over his "mixed case appeal."

*Analysis*

The parties disagree on whether Plaintiff has brought a proper "mixed case appeal" before the Court. This dispute constitutes the crux of this case, because an employee is entitled to seek review in a federal district court once the MSPB issues a dispositive ruling on a "mixed case," whether it be on the merits or for a procedural or jurisdictional defect. *See Perry v. Merit Systems Protection Bd.*, 137 S. Ct. 1975, 1986-88 (2017); *Kloeckner v. Solis*, 568 U.S. 41, 50, 56 (2012).

"A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color…[or] sex." 29 C.F.R. § 1614.302(a)(2). Normally, an employee alleging unlawful employment actions by an agency must split his claims into separate actions before different administrative entities depending on the allegations. For example, discrimination claims are heard by the agency's EEO office, *see* 29 C.F.R. § 1614.105, whistleblower claims go before the OSC, *see* 5 U.S.C. § 1214(a)(3), and certain "particularly serious" adverse actions are the domain of the MSPB, *see Kloeckner*, 568 U.S. at 44 (citing 5 U.S.C. §§ 1204, 7512, 7701). A "mixed case appeal" is, in essence, a hybrid action allowing an employee to streamline his case by bundling his claims into one proceeding before the MSPB. However, the MSPB's jurisdiction over a "mixed case" is still limited and not every set of bundled claims qualifies as a "mixed case."

The MSPB's jurisdictional threshold is set forth within 5 U.S.C. § 7702 and mirrors the definition within the CFR cited above. Specifically, 5 U.S.C. § 7702(a)(1) provides for MSPB jurisdiction:

> in the case of any employee . . . who—
>
> > (A) has been affected by an action which the employee. . . may appeal to the [MSPB], and
> >
> > (B) alleges that a basis for the action was discrimination prohibited by [various antidiscrimination statutes].

The critical issue is whether Plaintiff's case meets the requirements of subsection (A). Defendants contend that subsection (A) only covers the five "particularly serious" adverse actions enumerated within 5 U.S.C. § 7512 – "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or

less." Those actions are within the original jurisdiction of the MSPB and can thus be brought directly before it without exhaustion through the pertinent administrative office. It is undisputed that Plaintiff did not suffer any of those adverse employment determinations.

Plaintiff instead argues that he filed a proper "mixed case appeal" because his WPA claims, which he contends became "appealable" upon exhaustion, constitute "an action which the employee…may appeal to the [MSPB]." He thus reasons that the WPA claims, in conjunction with his discrimination claims, satisfy the jurisdictional requirements of 5 U.S.C. § 7702(a)(1) and 29 C.F.R. § 1614.302(a)(2). Plaintiff, however, has conflated the types of actions included within those guidelines with the IRA appeal granted to him by the OSC. There is no question that Plaintiff had the ability to pursue his WPA claims with the MSPB and obtain relief via the IRA appeal, *but for those claims only*, and not as part of a "mixed case." *See* 5 U.S.C. § 1221; 5 C.F.R. § 1209. The complicating wrinkle over the scope of the MSPB's authority thus lies between what the MSPB may hear as part of its *original* jurisdiction, set forth in 5 U.S.C. § 7702(a)(1), and its appellate jurisdiction, *see* 5 U.S.C. § 1221.

The issue is undoubtedly confounding, because 5 U.S.C. § 7702(a)(1) uses the word "appeal," but according to Defendants, it does not encompass an IRA appeal from an unfavorable OSC decision, as Plaintiff argues.

To resolve this issue, the Court considers a recent decision by the MSPB itself in which it addressed this very part of its jurisdiction. In *Blazey v. Department of Veterans Affairs*, the MSPB held that "IRA appeals are not subject to the provisions of 5 U.S.C. § 7702, thus the [MSPB] lacks authority to decide, in conjunction with an IRA appeal, the merits of an allegation of discrimination." 2018 MSPB LEXIS 4486, *7 (2018). That is the

exact posture of Plaintiff's case. While an unpublished agency decision is certainly not binding on the Court, it is persuasive and refreshingly illuminative in such a complicated area of the law. Plaintiff attempts to neutralize *Blazey* by stating on brief that the administrative law judge ("ALJ") "did not consider the relevant regulations," but he bases that assertion on the ALJ neglecting to include citations to them. This Court will not assume what the ALJ did or did not consider on those grounds.

At oral argument, Plaintiff also heavily relied upon *Perry v. MSPB* to support his contentions. *Perry*, he asserts, generally established that employees pursuing "mixed case appeals" should not be hamstrung by the confusing and interwoven administrative regulations and federal statutes governing this area of law. He contends that *Perry* delineated a new, broader form of streamlining that allows for greater intervention by the federal district courts in the interests of justice.

The Court cannot conclude that *Perry* extends that far, nor can it find that *Perry* applies at all in this case. The language in *Perry* defining a "mixed case" and thus defining its own limits, is highly instructive – "[b]ecause Perry 'complained of a personnel action *serious enough to appeal to the MSPB*' (in his case, a 30-day suspension and involuntary removal...) and 'allege[d] that the [personnel] action was based on discrimination,' he brought a mixed case." *Perry*, 137 S. Ct. at 1985 (quoting *Kloeckner*, 568 U.S. at 44) (emphasis added). The term "serious enough to appeal to the MSPB" clearly references situations when an employee may seek relief in the MSPB in his initial filing, and it specifically mentioned such examples. It cannot include "appealable" actions such as IRA appeals because that would effectively eliminate the distinction, and every action could constitute a "mixed case." Accordingly, the Court "h[e]ld... [that] in mixed cases, such as Perry's, in which the employee (or former

employee) *complains of serious adverse action*, (as defined by statute) in whole or in part, by the employing agency's violation of federal antidiscrimination laws, the district court is the proper forum for judicial review." *Id.* at 1988 (emphasis added). Based upon *Perry*'s scope, Plaintiff's case falls short.

Plaintiff further urges the Court to consider *Chin-Young v. United States*, a recent, unpublished Fourth Circuit decision which stated that *Perry* directs courts to "identify a mixed case by looking to a petitioner's allegations, not the basis for the MSPB's jurisdiction or disposition." *Chin-Young*, 2019 WL 2114737, *5 (4th Cir. 2019). The Court has considered Plaintiff's allegations, and they just do not constitute an action listed within 5 U.S.C. § 7512. Plaintiff then maintains that *Perry* and *Chin-Young* both held that a federal district court has jurisdiction over a "mixed case" when an individual brings an appealable action to the MSPB and alleges discrimination as a basis for the action. That is correct, but again, both of those cases involved *serious* adverse actions, while Plaintiff's does not.

Defendants highlighted these distinctions during oral argument, and in response, Plaintiff suggested the concept of a "constructive demotion," an arguably serious adverse action he believes should be implied within the scope of 5 U.S.C. § 7512, and which would render his case a "mixed case appeal" because he has effectively been demoted. While this argument is recognized by the Court as appreciable legal ingenuity, as was noted during oral argument on the matter and again here now, the Court is not empowered to insert language into or rewrite a federal statute, nor can it reasonably interpret any part of 5 U.S.C. § 7512 in that way.

Additionally, even assuming that Plaintiff's claims constitute an appropriate "mixed case appeal," he did not timely file his *MPSB III* action following the notification from the OSC that it would not pursue its investigation. To timely file an IRA appeal to the MSPB from the OSC, the

employee must seek corrective action "[n]o later than 65 days after the date of issuance of the [OSC's] written notification" that its investigation had terminated. *See* 5 C.F.R. § 1209.5(a)(1). Plaintiff filed his appeal 78 days after receiving notice. He asserts that he was entitled to rely in good faith upon the ALJ's 180-day deadline stated within the *MSPB II* decision, but Plaintiff cites no authority to support the argument that an ALJ may waive or ignore applicable deadlines and regulations, and the Court is aware of none. The only possible refuge for Plaintiff here is 5 C.F.R. § 1209.5(b), which provides for equitable tolling or an extension of the filing deadline for an IRA appeal. However, that subsection only applies when an individual, "despite having diligently pursued his or her rights, was unable to make a timely filing." *Id*. Plaintiff does not invoke that option, and it does not appear from the facts that it is applicable.

Accordingly, because Plaintiff did not suffer a *serious adverse action*, as defined by statute and the case law, Plaintiff does not have a proper "mixed case appeal" that this Court can consider, and even if he did, his case was untimely. Therefore, this Court concludes that it is not the proper forum to consider Plaintiff's case.

The Court certainly recognizes the underlying inequity of Plaintiff's dilemma – he feels wronged by the organization to which he has honorably devoted much of his professional life, and when he sought redress, he encountered a labyrinthine, bureaucratic morass that may well be unnavigable even by skilled litigators. Racial discrimination should never be tolerated in American society…particularly in the workplace. "There are societal as well as personal interests on both sides of this equation. The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions. In the implementation of such decisions, it is abundantly clear that Title VII tolerates no racial

discrimination, subtle or otherwise." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973).

However, in the absence of any authority that says otherwise, the Court concludes that it does not possess the power to allow Plaintiff's case to proceed here. Therefore, Defendants' motion is GRANTED, and this case is hereby dismissed.

The matter was well presented by all counsel. The court appreciates the professionalism of all involved.

It is **SO ORDERED.**

/s/
Rossie D. Alston, Jr.
United States District Judge

Alexandria, Virginia
August 7, 2019

/s/
Rossie D. Alston, Jr.
United States District Judge